# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL EVAN KEELING | : | Civil No. 4:09-CV-0147 |
| Plaintiff, | : | |
| v. | : | (Chief Judge Kane) |
| PETE DAMITER, et al., | : | (Magistrate Judge Carlson) |
| Defendants. | : | |

## MEMORANDUM OPINION AND ORDER

### I. Statement of Facts and of the Case.

This is a civil rights action brought by Michael Keeling, a state inmate, who is proceeding *pro se.* In his complaint, Keeling has named ten prison officials as Defendants, alleging that these staff violated his constitutional rights in the course of two separate acts of retaliation at two different institutions. (Doc. 33.) In addition, Keeling also complains about a series of prison housing decisions, decisions which he alleges were made in retaliation against him for prior litigation which he pursued against the Department of Corrections.

This matter now comes before the Court on a motion to compel (Doc. 87) filed by Keeling, which requests records relating to the disposition of every inmate grievance filed by prisoners in the state prison system from 2005 through 2010. While the basis for this request is not entirely clear, it seems that Keeling is attempting to

secure this wholesale discovery in order to bolster some sort of claim regarding alleged biases within the grievance system in the Department of Corrections. This motion has been fully briefed by the parties, (Docs. 90 and 100) and is now ripe for resolution.

For the reasons set forth below, the motion to compel will be denied.

**II.     Discussion**

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines both the scope and limitations governing the use of discovery in a federal civil action:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

In addition as the Supreme Court has observed:

Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery. On its own motion, the trial court "may alter the limits in [the Federal Rules] on the number of depositions and interrogatories and may also limit the length of depositions under Rule 30 and the number of requests under Rule 36. The frequency or extent of use of the discovery methods otherwise

> permitted under these rules ... shall be limited by the court if it determines that ... (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Rule 26(b)(2).
>
> Additionally, upon motion the court may limit the time, place, and manner of discovery, or even bar discovery altogether on certain subjects, as required "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(c). And the court may also set the timing and sequence of discovery. Rule 26(d).

Crawford-El v. Britton, 523 U.S. 574, 598-599 (1998).

Thus, Keeling's motion, and the Defendants' response in opposition to this motion, call upon the Court to exercise its authority under the Federal Rules of Civil Procedure to regulate discovery in this case. Issues relating to the scope of discovery permitted under the Rules rest in the sound discretion of the Court, Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987), and a court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

In this case, we find that Keeling's request for disclosure of statistical data on all inmate grievances throughout the state correctional system for a five year period is not calculated to lead to the discovery of admissible evidence, and would impose

an undue burden on state correctional officials. Therefore, the motion to compel (Doc. 87) will be denied.

At the outset, with respect to this motion, we find that this statistical information is not relevant to the issues raised by Keeling in his lawsuit. The merits of this lawsuit will rise or fall on the conduct of correctional staff with respect to Keeling. Nothing in accumulated statistics concerning the disposition of wholly unrelated grievances of thousands of other inmates will animate or inform the parties' understanding of the merits of Keeling's specific complaints. Therefore, this statistical information is not relevant to this lawsuit.

Further, we note that this statistical information would not, in our view, provide any grounds for further, independent claims against the Defendants since inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 Fed. Appx. 880, 2008 WL 2600723 at *1 (3d. Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995)

(because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). In sum, since "mere concurrence in a prison administrative appeal process does not implicate a constitutional concern," Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007), statistics regarding how thousands of completely unrelated inmate grievances were resolved by officials at other prisons throughout the Commonwealth would add nothing to the constitutional claims advanced by Keeling in this case.

Moreover, while this information is not relevant, we anticipate that compliance with this request would be burdensome. These burdens are a function of the fact that federal law creates powerful incentives for inmates to thoroughly exhaust these administrative remedies. The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made here grounded in alleged violations of the Eighth Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d. Cir.

2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals

> thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75 -76 (3d Cir. 2000)(citations omitted)

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x. 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

Because the PLRA broadly mandates exhaustion of internal prison

administrative grievance processes, the burdens of complying with wide-ranging discovery demands for statistical information on inmate grievance processing are now substantial. Indeed in light of this strong statutory preference favoring inmate submission of grievances to prison officials, it can be anticipated that many complaints of questionable merit will have been tendered to corrections officials over the years. This simple fact, which is a consequence of the law's strong preference for the presentation of inmate grievances to prison officials, has a dual significance. This fact both diminishes the probative value of statistics concerning the resolution of these grievances, while heightening the burden of collecting this statistical data. Given the significance of these discovery burdens, and the fact that the information derived from this burdensome disclosure would not likely be relevant to the particular issues raised in Keeling's case, and would not be calculated to lead to the discovery of relevant evidence, the proper exercise of our discretion here calls for denial of this motion.

Accordingly, for the foregoing reasons, it is ORDERED that the Plaintiff's motion to compel, (Doc. 87), is DENIED.

*S/Martin C. Carlson*
**United States Magistrate Judge**

**DATED:** **July 14, 2010**